# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ORLANDO CASTILLO ALEMAN,<br>Petitioner,<br>v.<br>WARDEN, CALIFORNIA CITY DETENTION CENTER,<br>Respondent. | Case No. 1:26-cv-03988-JLT-EPG-HC<br><br>FINDINGS AND RECOMMENDATION TO GRANT PETITION FOR WRIT OF HABEAS CORPUS AND DIRECT RESPONDENTS TO IMMEDIATELY RELEASE PETITIONER<br><br>ORDER DENYING MOTION FOR APPOINTMENT OF COUNSEL<br><br>(ECF No. 2) |

Petitioner is a federal immigration detainee proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. For the reasons set forth herein, the undersigned recommends that the petition for writ of habeas corpus be granted and Respondents be directed to immediately release Petitioner.

## I.

## BACKGROUND

Petitioner is a citizen of Cuba who entered the United States on May 26, 1980. Petitioner was encountered by Border Patrol and released with a Cuban Parole. (ECF No. 8-1 at 2.[1]) On May 16, 1990, Petitioner was ordered removed to Cuba. (ECF No. 8-2.)

[1] Page numbers refer to ECF page numbers stamped at the top of the page.

Petitioner was released on orders of supervision multiple times, most recently on November 13, 2018. (ECF No. 8-3.) In March 2026, Petitioner was arrested for petit theft. On March 28, 2026, Enforcement and Removal Operations ("ERO") encountered Petitioner at the Broward County Jail following his arrest and took Petitioner into custody. (ECF No. 8-1 at 2.). On April 2, 2026, a notice of revocation of release was issued. (ECF No. 8-5.)

On May 26, 2026, Petitioner filed a petition for writ of habeas corpus and a motion for temporary restraining order ("TRO"). (ECF Nos. 1, 3.) On May 27, 2026, the assigned district judge denied the motion for TRO as untimely. (ECF No. 6.) On June 17, 2026, Respondents filed a response. (ECF No. 8.) On August 31, 2026, Respondents filed a supplemental brief, and Petitioner filed a reply on September 21, 2026. (ECF Nos. 11, 12.)

## II.

## DISCUSSION

### A. Zadvydas

In Zadvydas v. Davis, 533 U.S. 678 (2001), the Supreme Court addressed a challenge to prolonged detention under § 1231(a)(6) by noncitizens who "had been ordered removed by the government and all administrative and judicial review was exhausted, but their removal could not be effectuated because their designated countries either refused to accept them or the United States lacked a repatriation treaty with the receiving country." Prieto–Romero, 534 F.3d at 1062 (citing Zadvydas, 533 U.S. at 684–86). The Supreme Court "read an implicit limitation" into the statute "in light of the Constitution's demands," holding that § 1231(a)(6) does not authorize indefinite detention and "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." Zadvydas, 533 U.S. at 689.

> After [a presumptively reasonable] 6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6–month presumption, of course, does not mean that every alien not removed must be released after six months. To the

> contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

Zadvydas, 533 U.S. at 701.

Respondents assert that Petitioner "is detained under 8 U.S.C. § 1231(a)(6) and his detention is thus presumptively reasonable for up to six months." (ECF No. 8 at 3.) However, the six-month presumptively reasonable detention period and "the burden-shifting framework from *Zadvydas* does not apply" to challenges to "ICE's authority to *re-detain* [petitioner] after he was issued a final order of removal, detained, and subsequently released on an [order of supervision]." Yan-Ling X. v. Lyons, 813 F. Supp. 3d 1157, 1163 (E.D. Cal. 2025) (alterations in original) (quoting Nguyen v. Hyde, 788 F. Supp. 3d 144, 149 (D. Mass. 2025)). "[T]his is not your typical first round detainment of an alien awaiting removal," whereas Zadvydas "dealt with the initial detainment of an alien awaiting removal." Escalante v. Noem, No. 9:25-CV-00182-MJT, 2025 WL 2206113, at *3 (E.D. Tex. Aug. 2, 2025).

**B. Revocation of Order of Supervision**

"Specific regulations, 8 C.F.R. §§ 241.13(i) and 241.4(l), govern how and when ICE may revoke the release of a noncitizen who has been ordered removed." Yan-Ling X., 813 F. Supp. 3d at 1162. 8 C.F.R. § 241.13(i) provides in pertinent part:

> (1) Violation of conditions of release. Any alien who has been released under an order of supervision under this section who violates any of the conditions of release may be returned to custody and is subject to the penalties described in section 243(b) of the Act. In suitable cases, the HQPDU shall refer the case to the appropriate U.S. Attorney for criminal prosecution. The alien may be continued in detention for an additional six months in order to effect the alien's removal, if possible, and to effect the conditions under which the alien had been released.
>
> (2) Revocation for removal. The Service may revoke an alien's release under this section and return the alien to custody if, on account of changed circumstances, the Service determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future. Thereafter, if the alien is not released from custody following the informal interview provided for in paragraph (h)(3) of this section, the provisions of § 241.4 shall govern the alien's continued detention pending removal.
>
> (3) Revocation procedures. Upon revocation, the alien will be notified of the reasons for revocation of his or her release. The

> Service will conduct an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification. The alien may submit any evidence or information that he or she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision. The revocation custody review will include an evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release.

8 C.F.R. § 241.13(i)(1)–(3).

8 C.F.R. § 241.4(b)(4) provides:

> Service determination under 8 CFR 241.13. The custody review procedures in this section do not apply after the Service has made a determination, pursuant to the procedures provided in 8 CFR 241.13, that there is no significant likelihood that an alien under a final order of removal can be removed in the reasonably foreseeable future. However, if the Service subsequently determines, because of a change of circumstances, that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future to the country to which the alien was ordered removed or to a third country, the alien shall again be subject to the custody review procedures under this section.

8 C.F.R. § 241.4(b)(4). With regard to revocation, 8 C.F.R. § 241.4(*l*) provides in pertinent part:

> (1) Violation of conditions of release. Any alien described in paragraph (a) or (b)(1) of this section who has been released under an order of supervision or other conditions of release who violates the conditions of release may be returned to custody. Any such alien who violates the conditions of an order of supervision is subject to the penalties described in section 243(b) of the Act. Upon revocation, the alien will be notified of the reasons for revocation of his or her release or parole. The alien will be afforded an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification.
>
> (2) Determination by the Service. The Executive Associate Commissioner shall have authority, in the exercise of discretion, to revoke release and return to Service custody an alien previously approved for release under the procedures in this section. A district director may also revoke release of an alien when, in the district director's opinion, revocation is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner. Release may be revoked in the exercise of discretion when, in the opinion of the revoking official:
>
> > (i) The purposes of release have been served;
> >
> > (ii) The alien violates any condition of release;

> (iii) It is appropriate to enforce a removal order or to commence removal proceedings against an alien; or
>
> (iv) The conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate.[2]

8 C.F.R. § 241.4(*l*)(1)–(2).

1. Informal Interview

As set forth above, regulations require that upon revocation of an order of supervision, the "Service will conduct an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. § 241.13(i)(3). Respondents concede that "Petitioner did not receive an informal interview" but contend that "the failure to follow this administrative rule is not prejudicial and therefore does not invalidate his detention and removal." (ECF No. 11 at 1.)

The Court finds Azzo v. Noem, No. 3:25-CV-03122-RBM-BJW, 2025 WL 3535208 (S.D. Cal. Dec. 10, 2025), persuasive:

> "[T]here are, for present purposes, two types of regulations: (1) those that protect fundamental due process rights, and (2) [ ] those that do not." *United States v. Raya-Vaca*, 771 F.3d 1195, 1205 (9th Cir. 2014), *abrogated on other grounds by Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103 (2020). "A violation of the first type of regulation ... implicates due process concerns even without a prejudice inquiry." *Id.* (holding that where "the regulation violation ... constituted a denial of [the defendant's] right to notice and an opportunity to respond, no showing of prejudice [was] necessary to establish a due process violation"). "There can be little argument that ICE's requirement that noncitizens be afforded an informal interview ... derives from the fundamental constitutional guarantee of due process." *Ceesay v. Kurzdofer*, 781 F. Supp. 3d 137, 165 n.26 (W.D.N.Y. 2025). Accordingly, Respondents' violation "implicates due process concerns even without a prejudice inquiry." *Raya-Vaca*, 771 F.3d at 1205.
>
> But even if that were not the case, Petitioner suffered sufficient prejudice. In the immigration context, "violation of a regulation does not invalidate a deportation proceeding unless the regulation serves a purpose of benefit to the [noncitizen]," *i.e.*, the violation

[2] Although "DHS has asserted in other litigation that the notice [and interview] requirements set forth in 8 C.F.R. § 241.4(l)(1) do not constrain revocation of release pursuant to § 241.4(l)(2), several district courts have rejected that argument." Khamba v. Albarran, No. 1:25-cv-01227 JLT SKO, 2025 WL 2959276, at *8 n.13 (E.D. Cal. Oct. 17, 2025) (collecting cases and "agree[ing] with those decisions that the notice and interview requirements apply to anyone whose supervision has been revoked pursuant to 8 C.F.R. § 241.4(l)(1) or (2)."

> "prejudiced interests of the [noncitizen] which were protected by the regulation." *United States v. Calderon-Medina*, 591 F.2d 529, 531 (9th Cir. 1979). ICE's failure to comply with the requirements of § 241.4 and § 241.13 "prejudiced interests of [Petitioner] which were protected by the regulation[s]." *Id.* Both § 241.4 and § 241.13 were intended "to provide due process protections to [noncitizens] following the removal period as they are considered for continued detention, release, and then possible revocation of release." *Orellana v. Baker*, Civil Action No. 25-1788-TDC, 2025 WL 2444087, at *6 (D. Md. Aug. 25, 2025). ICE deprived Petitioner of these due process protections when it failed to provide him with a prompt interview to respond to the reasons for revocation of his release. "It is well established that the deprivation of constitutional rights unquestionably constitutes irreparable injury." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *see also Hernandez v. Sessions*, 872 F.3d 976, 995, 1000 (9th Cir. 2017) (holding that "[u]nlawful detention" by immigration officials constituted "irreparable harm"). Therefore, Petitioner was prejudiced by ICE's failure to comply with its own regulations.
>
> Government agencies are required to follow their own regulations. *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954); *Confederated Tribes & Bands of Yakima Indian Nation v. F.E.R.C.*, 746 F.2d 466, 474 (9th Cir. 1984) ("It is a well-known maxim that agencies must comply with their own regulations.") The great weight of district courts have "determined that where ICE fails to follow its own regulations in revoking release, the detention is unlawful and the petitioner's release must be ordered." *Rokhfirooz v. LaRose*, — F. Supp. 3d —, 2025 WL 2646165, at *4 (S.D. Cal. Sept. 15, 2025); *see, e.g., K.E.O. v. Woosley*, Civil Action No. 4:25-cv-74-RGJ, 2025 WL 2553394, at *7 (W.D. Ky. Sept. 4, 2025) (noting "courts across the country have ordered the release of individuals" in ICE custody where ICE "violated their own regulations"); *Grigorian v. Bondi*, CASE NO. 25-cv-22914-RAR, 2025 WL 2604573, at *10 (S.D. Fla. Sept. 9, 2025) ("The failure to provide [the petitioner] with an informal interview promptly after his detention or to otherwise provide a meaningful opportunity to contest the reasons for revocation violates both ICE's own regulations and the Fifth Amendment Due Process Clause. This compels [the petitioner's] release."). This Court reaches the same conclusion; Respondents' violation of agency regulations constitutes separate grounds for granting the Petition.

<u>Azzo</u>, 2025 WL 3535208, at *5–6.

Respondents argue:

> Here, DHS has discretion to relax its rule to provide an informal interview; any error in doing os [*sic*] is harmless. The purpose of the informal interview is to relate to Petitioner the reason for the revocation. § 241.4(l)(1). Petitioner's OSUP notified him that remaining crime free was a condition of his release and that any violation could revoke his release. *See* ECF No. 8, Doc 8-3 at 3. Nonetheless, Petitioner was arrested for Petite Theft, in addition to

> many other crimes, since his OSUP. *Id*., Docs. 8-1 and 8-4 at 48-59. Therefore, Petitioner received constructive notice of his violations, which render an informal interview a meaningless procedural formality. Additionally, due to Petitioner's post-OSUP criminality, the result of such an interview would result in Petitioner's detention anyway, and thus bar an "overturning" of the OSUP revocation. Therefore, no prejudice exists from the lack of an informal interview.

(ECF No. 11 at 2–3.)

Contrary to Respondents' assertion that the "purpose of the informal interview is to relate to Petitioner the reason for the revocation," (ECF No. 11 at 2), the regulations provide that the purpose of the interview is "to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. § 241.13(i)(3); 8 C.F.R. § 241.4(*l*)(1). Therefore, receiving notice of revocation does not "render an informal interview a meaningless procedural formality." (ECF No. 11 at 2.) Although Respondents argue that "due to Petitioner's post-OSUP criminality, the result of such an interview would result in Petitioner's detention anyway" and "no prejudice exists from the lack of an informal interview," (ECF No. 11 at 2–3), the Court adopts the reasoning of Azzo and finds that "Respondents' violation implicates due process concerns even without a prejudice inquiry[,]" and "even if that were not the case, Petitioner suffered sufficient prejudice" given that "§ 241.4 and § 241.13 were intended to provide due process protections to [noncitizens] following the removal period as they are considered for . . . possible revocation of release[,]" "ICE deprived Petitioner of these due process protections when it failed to provide him with a prompt interview to respond to the reasons for revocation of his release[,]" and "[i]t is well established that the deprivation of constitutional rights unquestionably constitutes irreparable injury." Azzo, 2025 WL 3535208, at *5, 6 (citations and internal quotation marks omitted).

Respondents further argue that "[e]ven assuming *arguendo* Petitioner experienced prejudice, such prejudice cannot be substantial, as Petitioner's final order of deportation renders Petitioner subject to OSUP revocation at any time to effectuate his deportation. 8 C.F.R. § 241.4(l)(2)(iii)." (ECF No. 11 at 3.) However, this Court has found "that the notice and interview requirements apply to anyone whose supervision has been revoked pursuant to 8

C.F.R. § 241.4(l)(1) or (2)." Khamba v. Albarran, No. 1:25-cv-01227 JLT SKO, 2025 WL 2959276, at *8 n.13 (E.D. Cal. Oct. 17, 2025).

2. Petitioner's Detention Has Exceeded the Six Months Authorized by § 241.13(i)(1)

Even if the Court were to disregard Respondents' failure to follow regulations and provide Petitioner with a prompt informal interview, Petitioner's detention has exceeded the six months authorized by § 241.13(i)(1). See 8 C.F.R. § 241.13(i)(1) ("Any alien who has been released under an order of supervision under this section who violates any of the conditions of release may be returned to custody . . . . The alien may be continued in detention for an additional six months in order to effect the alien's removal, if possible, and to effect the conditions under which the alien had been released."); Tran v. Warden, California City Corr. Ctr., No. 1:26-cv-04098-DAD-CKD (HC), 2026 WL 2099295, at *3 (E.D. Cal. July 21, 2026) ("First, petitioner's continued detention is no longer authorized by § 241.13(i)(1). Petitioner has now been in detention for more than six months since ICE determined that he violated the conditions of his release. The plain language of the regulation indicates that the continued detention of a noncitizen who violates the conditions of their release is authorized only for an additional six months."); Banos-Jiron v. Lyons, No. 1:26-cv-00716-KES-CDB (HC), 2026 WL 972527, at *4 (E.D. Cal. Apr. 10, 2026) ("The plain meaning of the provision that '[t]he alien may be continued in detention *for an additional six months*' limits detention based on a violation of the Order of Supervision to six months." (citing 8 C.F.R. § 241.13(i)(1))).

Based on the foregoing, as Petitioner's detention has surpassed six months, "his criminal history does not automatically justify his present detention." Pedro V.L. v. Warden, No. 1:26-cv-05261-JLT-EGC (HC), 2026 WL 2607611, at *1 (E.D. Cal. Sept. 3, 2026) (finding continued detention for more than eight months not authorized by § 241.13(i)(1)). See Thai v. Ashcroft, 366 F.3d 790, 797 (9th Cir. 2004) ("Like Ma, Thai is an ordinary violent criminal. If a need to protect the community did not justify the detention of Ma—a killer—under § 1231(a)(6), it similarly does not justify the detention of Thai."); Obando Vargas v. Blanche, No. 1:26-cv-05343-DAD-AC (HC), 2026 WL 2056618, at *2 (E.D. Cal. July 16, 2026) ("In short, binding Ninth Circuit and Supreme Court authority forecloses the import of criminal history in

determining whether petitioner is entitled to release from detention pursuant to 8 U.S.C. § 1231(a)(6), both insofar as that history suggests petitioner is a danger or a risk of flight.”).

Further, Respondents have not shown that there is a significant likelihood of Petitioner's removal in the reasonably foreseeable future. Respondents are pursuing third-country removal to Mexico. (ECF No. 8-6 at 1.) “Courts have noted that that the standing agreement between the United States and Mexico appears premised on Petitioner’s compliance and have therefore held removal based on the standing agreement between the United States and Mexico is not reasonably foreseeable when the noncitizen does not consent to the removal.” Ramirez Outerino v. Warden, Mesa Verde ICE Processing Ctr., No. 1:26-cv-05326-DJC-JDP, 2026 WL 2327873, at *2 n.1 (E.D. Cal. Aug. 11, 2026) (collecting cases). Here, Petitioner has refused consent to removal to Mexico. (ECF No. 8-6 at 1.) Accordingly, Respondents have failed to satisfy their burden that changed circumstances have made Petitioner’s removal significantly likely in the reasonably foreseeable future under 8 C.F.R. § 241.13(i), and “even assuming the traditional burden shifting framework from *Zadvydas v. Davis*, 533 U.S. 678, 683 (2001), applies, the facts here satisfy Petitioner’s burden to show there is good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future, and Respondents fail to rebut that showing.” Pedro V.L., 2026 WL 2607611, at *1.

**C. Remedy**

“Federal habeas corpus practice, as reflected by the decisions of [the Supreme] Court, indicates that a court has broad discretion in conditioning a judgment granting habeas relief. Federal courts are authorized, under 28 U.S.C. § 2243, to dispose of habeas corpus matters ‘as law and justice require.’” Hilton v. Braunskill, 481 U.S. 770, 775 (1987). “[H]abeas corpus is, at its core, an equitable remedy.” Schlup v. Delo, 513 U.S. 298, 319 (1995).

1. Immediate Release

Based on the foregoing, the undersigned recommends finding that Petitioner’s re-detention was unlawful, Petitioner’s detention has exceeded six months and is no longer authorized by § 241.13(i)(1), and his immediate release from custody is warranted. See Pedro V.L., 2026 WL 2607611, at *2 (ordering immediate release where continued detention for more

than eight months was not authorized by § 241.13(i)(1) and there was no significant likelihood of removal in the reasonably foreseeable future given petitioner's non-consent to third country removal to Mexico); Yang v. Kaiser, No. 2:25-CV-02205-DAD-AC (HC), 2025 WL 2791778, at *5 (E.D. Cal. Aug. 20, 2025) (finding that "failure to provide an informal hearing is alone sufficient to entitle petitioner to the requested" relief of release from custody); Nguyen, 788 F. Supp. at 152–53 ("ICE's individualized determination to re-detain Mr. Nguyen is not in compliance with 8 C.F.R. § 241.13(f), (i)(2)" and "[b]ased on ICE's violations of its own regulations, I conclude that Mr. Nguyen's detention is unlawful and that his release is appropriate."); Liu v. Carter, No. 25-3036-JWL, 2025 WL 1696526, at *3 (D. Kan. June 17, 2025) ("Accordingly, the Court concludes that because officials did not properly revoke petitioner's release pursuant to the applicable regulations, that revocation has no effect, and petitioner is entitled to his release (subject to the same Order of Supervision that governed his most recent release)."); Yan-Ling X., 813 F. Supp. 3d at 1167 ("Petitioner has shown that she is likely to succeed on her claim that ICE did not have sufficient grounds to re-detain her under the regulations, and that her re-detention was therefore unlawful. Her immediate release is required to return her to the status quo ante.").

2. Pre-Deprivation Hearing

"[M]any courts in this district have found that when a non-citizen subject to a final order of removal is released on OSUP and is re-detained years later, the non-citizen is entitled to a pre-deprivation hearing prior to detention due to an accrued liberty interest." Huang v. Albarran, 818 F. Supp. 3d 1154, 1166 (E.D. Cal. 2026) (citing J.L.R.P. v. Wofford, No. 1:25-cv-01464-KES-SKO (HC), 2025 WL 3190589, at *8–10 (E.D. Cal. Nov. 14, 2025); Alva v. Kaiser, No. 25-cv-06676-RFL, 2025 WL 2419262, at *3–5 (N.D. Cal. Aug. 21, 2025)). Applying the Mathews v. Eldridge, 424 U.S. 319 (1976), factors, the J.L.R.P. court "found that the petitioner was entitled to a bond hearing prior to re-detention because":

> (1) petitioner had a significant private interest in remaining free from detention after being out of custody for nearly four years and built normal attachments to life (2) the risk of erroneous deprivation is high because 8 C.F.R. §§ 241.13 and 241.4 do not provide for review of ICE's reasons for revocation by a neutral

> arbitrator and (3) the government's interest in detaining petitioner without a hearing is low because in immigration court, custody hearings are routine with minimal costs.

Huang, 818 F. Supp. 3d at 1166 (citing J.L.R.P., 2025 WL 3190589, at *9–10). "Similarly, in *Alva*, the court found a due process violation where the government detained a non-citizen with a final order of removal, released on OSUP for over six years, without a pre-deprivation hearing." Huang, 818 F. Supp. 3d at 1166 (citing Alva, 2025 WL 2419262, at *3–5). Likewise, in Huang, the court found a due process violation where the government detained the petitioner with a final order of removal, released on OSUP for nearly seven and a half years, without a pre-deprivation hearing. Huang, 818 F. Supp. 3d at 1166–67.

**D. Motion to Appoint Counsel**

Petitioner has moved for appointment of counsel. (ECF No. 2.) There currently exists no absolute right to appointment of counsel in habeas proceedings. See, e.g., Chaney v. Lewis, 801 F.2d 1191, 1196 (9th Cir. 1986); Anderson v. Heinze, 258 F.2d 479, 481 (9th Cir. 1958). However, 18 U.S.C. § 3006A(a)(2)(B) authorizes the appointment of counsel at any stage of the proceeding for financially eligible persons if "the interests of justice so require." To determine whether to appoint counsel, the "court must evaluate the likelihood of success on the merits as well as the ability of the petitioner to articulate his claims *pro se* in light of the complexity of the legal issues involved." Weygandt v. Look, 718 F.2d 952, 954 (9th Cir. 1983).

In light of the Court's recommendation that Petitioner is entitled to habeas relief, the undersigned will deny Petitioner's motion for appointment of counsel.

**III.**

**RECOMMENDATION & ORDER**

Accordingly, the undersigned HEREBY RECOMMENDS that:

1. The petition for writ of habeas corpus be GRANTED.
2. Respondents be directed to immediately release Petitioner from custody under appropriate conditions.
3. Respondents be enjoined and restrained from re-detaining Petitioner pursuant to 8 C.F.R. § 241.13(i)(2) unless there are material changed circumstances and a neutral

decisionmaker determines that there is a significant likelihood of Petitioner's removal in the reasonably foreseeable future.

Further, the motion for appointment of counsel (ECF No. 2) is DENIED.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within **FOURTEEN (14) days** after service of the Findings and Recommendation, any party may file written objections, **no longer than fifteen (15) pages, including exhibits**, with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The assigned United States District Court Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **October 5, 2026**

/s/ Erica P. Grosjean
UNITED STATES MAGISTRATE JUDGE